IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ALEXANDER NUNGARAY, ) | No. C 09-1768 LHK (PR) |
| ) | |
| Plaintiff, ) | ORDER DENYING DEFENDANTS' |
| ) | MOTION FOR SUMMARY |
| vs. ) | JUDGMENT |
| ) | |
| LINDA ROWE, et al., ) | |
| ) | (Docket No. 32) |
| Defendants. ) | |
| ) | |

Plaintiff Mario Alexander Nungaray, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Doctors Rowe and Adams at Pelican Bay State Prison ("PBSP"). Defendants have moved for summary judgment. Plaintiff has opposed Defendants' motion, and Defendants have filed a reply. Having carefully considered the papers submitted, the Court hereby DENIES Defendants' motion for summary judgment without prejudice, for the reasons set out below.

## BACKGROUND[1]

Plaintiff suffers from rheumatoid arthritis in his neck, spine, and feet. (Compl. at ¶ 1.) Plaintiff also suffers from a recurring ingrown toenail. (*Id.* at ¶ 2.) The toenail gets infected. (*Id.* at ¶ 3.)

Prior to his incarceration at PBSP, Plaintiff was housed at Corcoran State Prison. On

---

[1] The following facts are undisputed.

Order Denying Defendants' Motion For Summary Judgment
P:\PRO-SE\SJ.LHK\CR.09\Nungaray768denmsj.wpd

1  February 4, 2008, Plaintiff saw a podiatrist who recommended orthotic or prosthetic boots or
2  shoes to support his flat feet pain and related symptoms associated with flat feet. (*Id.* at
3  ¶¶ 14-15.) In May 2008, Plaintiff received a chrono for orthotic shoes that "shall be honored as
4  a permanent chrono at all institutions." (*Id.* at ¶ 16.)
5      On June 17, 2008, Plaintiff was transported to PBSP, ordered to remove his orthotic
6  shoes, and upon arrival, Plaintiff discovered that his orthotic shoes were lost. (*Id.* at ¶¶ 18-19.)
7  Shortly thereafter, Plaintiff notified Dr. Rowe about his medical condition, infected ingrown
8  toenail, and lost orthotic shoes. (*Id.* at ¶ 19.) He requested immediate medical treatment due to
9  his pain. (*Id.*) On July 10, 2008, LVN Anbin replied to Plaintiff's request to see Dr. Rowe and,
10 on July 13, 2008, LVN Anbin informed Plaintiff that he had a "chronic care" appointment
11 scheduled within the next two weeks. (*Id.* at 21.)
12     After several more submitted requests to see Dr. Rowe, Plaintiff finally saw Dr. Rowe on
13 August 4, 2008. (*Id.* at ¶¶ 22-24.) According to Plaintiff, he attempted to show Dr. Rowe his
14 medical records and 602 appeal from Corcoran State Prison which authorized him to see a
15 podiatrist. (*Id.* at ¶ 24.) Dr. Rowe dismissed his papers and told him, "I don't care about what
16 you have to say. I'm not going to look at these medical records in regards to your toe. Nor do I
17 care about your 602 (administrative appeal). We don't have a podiatrist at this institution so
18 your [sic] just going to have to let the toenail grow out." (*Id.* at ¶ 25.) Plaintiff informed Dr.
19 Rowe that he was in pain and Dr. Rowe remarked that Plaintiff should have had his flat feet
20 fixed when he was a "kid," and that there was nothing she could do for Plaintiff. (*Id.* at ¶ 28.)
21 She continued to comment that Plaintiff had too many medical problems and that "they" should
22 have left Plaintiff where he came from. (*Id.*) Dr. Rowe finally stated that she would only
23 prescribe antibiotics and give Plaintiff some cotton swabs. (*Id.* at ¶ 30.) However, Dr. Rowe did
24 not prescribe any medication and did not even examine Plaintiff's feet or toenail. (*Id.*)
25     On August 11, 2008, Plaintiff was given non-fitting arch supports, which resulted in
26 exacerbating Plaintiff's foot pain. (*Id.* at ¶ 31.)
27     On September 8, 2008, Dr. Rowe examined Plaintiff again, and ordered foot x-rays to
28 determine whether Plaintiff's foot was fractured or broken. (*Id.* at ¶ 35.) She also ordered

1   surgery to wedge the ingrown toenail. (*Id.*)  She further informed Plaintiff that there is no
2   podiatrist to make any shoes of the type that he requested, and that if he wanted to, he could buy
3   soft soled tennis shoes from an outside vendor. (Pl. Decl. at ¶ 58.)  Plaintiff responded that the
4   approved vendor for soft soled shoes did not provide any type of prosthetic or orthotic shoes.
5   (*Id.* at ¶ 61.)  Dr. Rowe ignored him. (*Id.*)  On September 15, 2008, Plaintiff saw Dr.
6   Risenhoover to remove his ingrown toenail, however, the surgery had to be delayed because Dr.
7   Rowe had failed to prescribe antibiotics for the infected toenail. (Compl. at ¶¶ 36, 47.)  Dr.
8   Risenhoover prescribed a foot soak, pain reliever, and antibiotic medication to clear the
9   infection. (Pl. Decl. at ¶ 65.)  On September 16, 2008, Plaintiff saw Dr. Rowe to complain about
10  pain, and Dr. Rowe said, "Don't go there.  I don't want to hear it." (*Id.* at ¶ 37.)

11       On October 8, 2008, Plaintiff saw Dr. Adams and explained his medical condition and
12  pain. (*Id.* at ¶ 40.)  Plaintiff also informed her that the arch supports were ineffective and
13  actually caused more pain. (*Id.*)  Dr. Adams ordered removal of the arch supports. (*Id.* at ¶ 41.)
14  Dr. Adams noted that Plaintiff still had an infected toenail, and that his x-rays showed no broken
15  bones or fractures. (*Id.* at ¶¶ 42-43.)  Dr. Adams reported that Plaintiff's objective data did not
16  support claimed disability and rejected his request for orthotic shoes. (*Id.* at ¶ 44; Pl. Decl at
17  ¶ 71.)  Plaintiff claims that this was contrary to his history and recurring infected ingrown
18  toenail. (Compl. at ¶ 44.)  Plaintiff further states that Dr. Adams assessed that his feet had blood
19  blisters, which was due to not having the proper footwear. (Pl. Decl. at ¶¶ 73-74.)

20       On October 14, 2008, Plaintiff was examined by Cynthia G. (Compl. at ¶ 48.)  She
21  observed Plaintiff's pain and discomfort and ordered new arch supports, which were identical to
22  the ones removed by Dr. Adams. (*Id.*)  On October 20, 2008, Dr. Risenhoover partially removed
23  Plaintiff's ingrown toenail. (*Id.*; Pl. Decl. at ¶¶ 81-82.)  Dr. Risenhoover informed Plaintiff that
24  she would set another appointment to remove the other side of the ingrown toenail. (Pl. Decl. at
25  ¶ 83.)

26       On October 27, 2008, Plaintiff received new arch supports, but because they were
27  identical to the previous supports, they caused more pain, and were ineffective. (Compl. at
28  ¶ 49.)  Plaintiff continues to have serious pain in his feet, ankles, knees, back, and neck due to

1  not having proper foot support. (*Id.*)

## DISCUSSION

A.  <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court is only concerned with disputes over material facts; "factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby, Inc.*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with

Order Denying Defendants' Motion For Summary Judgment
P:\PRO-SE\SJ.LHK\CR.09\Nungaray768denmsj.wpd    4

1 evidence produced by the nonmoving party, the judge must assume the truth of the evidence set
2 forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152,
3 1158 (9th Cir. 1999).

B. <u>Evidence Considered</u>

A district court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10–11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit). Plaintiff's complaint is verified, and thus serves as an affidavit. Plaintiff's verified declaration (docket no. 35) also serves as an affidavit.

Defendants provide a declaration from their expert witness, Dr. Harold W. Orr. Rule 703 of the Federal Rules of Evidence allows an expert to give his opinion in limited circumstances even if it is based on hearsay. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984). However,

> "Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert relies, to be admitted to explain the basis of the expert's opinion. *See Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his expert opinion, Fed. R. Evid. 703, but not as general proof of the truth of the underlying matter, Fed. R. Evid. 802."). *See generally* S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 467 (3d ed. 1982). It does not allow the admission of the reports to establish the truth of what they assert."

*Id.* at 1262. Here, Dr. Orr's opinion is admissible as expert testimony under Rule 703. However, neither party has submitted the relevant medical records corresponding to the dates

1  that Defendants examined Plaintiff from June 2008 through October 2008.[2]  Without those
2  medical records, the facts upon which Dr. Orr relied to form his opinion – i.e., his statements as
3  to what Defendants wrote in the medical records, and as to what occurred at these appointments
4  – are inadmissible hearsay.  Because those facts are not in evidence, and are contradictory to the
5  non-moving party's facts, Dr. Orr's opinion that Defendants properly treated Plaintiff, based on
6  inadmissible evidence, is irrelevant to this Court's analysis of Defendants' motion for summary
7  judgment.

8  C.       Analysis

9        Plaintiff claims that Defendants failed to adequately treat his serious medical conditions
10 and infected ingrown toenail. (Compl. at ¶ 5.)  Plaintiff alleges that Defendants delayed
11 necessary treatment to his ingrown toenail by not providing antibiotics, pain medication, and
12 surgery to remove the toenail.  (*Id.*)  Plaintiff also argues that Defendants have denied him an
13 examination by a foot specialist in order to be provided with necessary prosthetic shoes for
14 Plaintiff's flat feet, and failed to take measures to replace Plaintiff's previously prescribed
15 prosthetic shoes that were confiscated by CDCR transportation and subsequently lost. (*Id.* at
16 ¶¶ 6-7.)

17        As stated above, Defendants have the initial burden of demonstrating "that there is an
18 absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 323.
19 Defendants have failed to provide sufficient evidence to meet their burden.  Viewing the facts in
20 the light most favorable to Plaintiff, there is an inference that Defendants' response to Plaintiff's
21 allegations of serious foot pain was a purposeful act or failure to act which resulted in harm to
22 Plaintiff.  *See McGuckin*, 974 F.2d at 1060.

23        Having concluded that genuine issues of material facts exist as to whether Defendants
24 were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth

---

26   [2] The Court notes that Plaintiff's declaration refers to several exhibits that presumably
27 should be the medical records corresponding to Plaintiff's appointments with Defendants from
   June 2008 through October 2008.  However, a review of the exhibits attached to the declaration
28 reveals only documents dated before September 22, 2006, one on August 21, 2008, one on
   October 30, 2008, and the remaining dated after May 20, 2009.

1  Amendment, the Court next addresses whether he is entitled to qualified immunity. A court
2  considering a claim of qualified immunity must determine whether the plaintiff has alleged the
3  deprivation of an actual constitutional right and whether such right was clearly established such
4  that it would be clear to a reasonable officer that his conduct was unlawful in the situation he
5  confronted. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

6  Although the facts at trial might show otherwise, at this stage, the unresolved factual
7  allegations as viewed in the light most favorable to Plaintiff show a violation of his right to be
8  free from cruel and unusual punishment. "It is settled law that deliberate indifference to serious
9  medical needs of prisoners violates the Eighth Amendment." *Jackson v. McIntosh*, 90 F.3d 330,
10 332 (9th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Prison officials are
11 deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or
12 intentionally interfere with medical treatment." *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th
13 Cir. 1989) (internal quotations and citation omitted). "For a right to be clearly established it is
14 not necessary that the very action in question have previously been held unlawful. . . . To define
15 the law in question too narrowly would be to allow defendants to define away all potential
16 claims." *Jackson*, 90 F.3d at 332 (internal quotations and citations omitted).

17 Because Defendants have not produced sufficient evidence to demonstrate that their
18 actions were reasonable, *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995),
19 the Court cannot say as a matter of law that it was objectively reasonable for Defendants to
20 believe that the facts as they stand on summary judgment showed no violation of a clearly
21 established right. Accordingly, these issues remain to be resolved in further proceedings, and
22 summary judgment on Defendants' request for qualified immunity is DENIED.

23 D.       Referral to Pro Se Prisoner Settlement Program

24 The Court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se
25 Prisoner Settlement Program for settlement proceedings on the claims set forth above. The
26 proceedings will consist of one or more conferences as determined by Judge Vadas. The
27 conferences shall be conducted with Defendants, or their representatives, attending by
28 videoconference if they so choose. If these settlement proceedings do not resolve this matter, the

1 Court may set this matter for trial or order other further proceedings, and consider a motion from
2 plaintiff for appointment of counsel.

## CONCLUSION

1. Defendants' motion for summary judgment is DENIED.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims in this action, as described above. The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the Court a report regarding the prisoner settlement proceedings.

3. The Clerk of the Court shall mail a copy of the Court file, including a copy of this order, to Judge Vadas in Eureka, California.

4. The instant case is STAYED pending the settlement conference proceedings.

IT IS SO ORDERED.

DATED:  8/30/11

*Lucy H. Koh*
LUCY H. KOH
United States District Judge